Our next case this morning is Baez-Sanchez v. Barr. Good morning. My name is Mr. Zachary Avalon. I'm here on behalf of the petitioner. I'm Mr. Baez-Sanchez. The last time this case was here, this court held that immigration judges have the power to issue waivers of inadmissibility to U-Visa applicants pursuant to 8 U.S.C. 1182 D.3.A.2. But the court remanded back to the Board of Immigration Appeals and gave it a chance to consider two additional arguments that were raised for the first time on appeal by the government attorneys. But on remand, that's not what the board did. Instead, the board expressly disagreed with the holdings of this court and held that immigration judges have the power to issue waivers of inadmissibility to U-Visa applicants. The board did not base its conclusions on any new analysis, just repeated that it disagreed with the holdings of this court and grounded its decisions on reasoning that this court has already explicitly rejected. And that should make this a very easy case. Mr. Avalon, let me ask you. The immigration judge, as I understand it in this case, has twice granted this waiver of inadmissibility. Is that right? That's correct, Your Honor. There was an initial remand for applying a more stringent standard? That's correct, Your Honor. That remand would certainly seem to have implied that the board thought that the IJ had the power to do that, right? The board has been very inconsistent in applying that. At this point, is there any issue on the merits of the immigration judge's exercise of discretion to grant that waiver of inadmissibility? I'm not aware of any, and I do not believe that the government raised any. After the second IJ decision, there's only been discussion about the power to do it at all? I believe specifically on the remand from this court down to the board during that proceeding, but the government raised no other issues. Where I'm going with this is that, as you know, in administrative law cases, the ordinary remedy is to remand to the agency for a fresh decision. But in rare cases where agencies are intransigent and there's really no issue, sometimes courts will simply order the relief directly. If we were to do that, would that be more than you'd want to defend or an overreach, or would that be appropriate at this point in this case? Your Honor, frankly, we have not considered that in depth. I believe we'd be happy with that result. We would also be happy with... Well, what Judge Hamilton was asking was, are you going to be happy when you submit the brief in opposition to the petition for certiorari... If we do that. ...saying we have engaged in ultra-viris conduct? We'd be happy to defend this court in the Supreme Court as well. Absolutely. And so, as I mentioned, this should make this an easy case. Under both the laws of this circuit and the law of the case, the board's decision is plainly wrong and must be vacated. And, in fact, the government agrees that the board's decision below cannot stand. I don't think it's fair to say that they agree that it cannot stand. They have just asked us to remand to consider a total irrelevancy, which is how much deference does the board think we ought to give it? Since we're the only ones who can decide how much deference to give to the board, the board's view on that question is neither here nor there. The thing that's interesting, at least to me, but we'll be asking Mr. Tennyson about this, is the failure of the Attorney General to defend any of the board's reasoning. I mean, you've accurately observed that they're not defending the board, but I don't think it's fair to say they've confessed error on the board either. Well, they explicitly said that there was no error, but they're refusing to acknowledge that the board's or they seem to recognize that the board's decision, because it's not afforded any deference and provided no additional reasoning, they seem to have made a calculated decision that it is unlikely to be affirmed here in this court. And that's why they seem to want to remand without or they've explicitly asked for a remand without any instructions whatsoever in hopes that the board will reach the same decision again next time, but perhaps in an opinion or in a format that might be afforded more deference. But the court should deny that request, just like it denied the first request that the government made for remand, because the government's request has no basis in law. According to the government's argument, under the Supreme Court's recent decision in Kaiser, it is too soon for this court to review this final agency action, because the board's opinion is, in the government's own words, not thoroughly reasoned and not fully cooked. In other words, as you mentioned, the government takes the extraordinary position that when a reviewing court encounters final agency action that is not authoritative or well-reasoned, that Kaiser requires the court to remand back down to the board to allow the agency to try again and come up with better reasons or more authoritative opinion. But the government's argument— Of course, the agency could have done that on its own. The attorney general on his own motion can review any decision of the board. I take it that wasn't done here. That was—if your question is— We remanded for the board to do two particular things. It chose not to do those things. That's correct. I take it the attorney general could have glommed onto the case and said, okay, I'm going to do those two things, and here is the answer. I believe that the government is probably best suited to answer that question, but I'm unaware of any regulations that would have prevented the attorney general, either the office that's litigating this case or the attorney general. I know. There's a sense in which I'm asking you a question that Mr. Tennyson needs to address. You're not the attorney general's keeper, that much we understand. That is true. Just to make it clear, what we're asking for the court to do is to remand back to the board with specific instructions that immigration judges do have the authority to issue these waivers of admissibility, and neither Kaiser nor any other case supports the government's novel effort here to secure yet another do-over in hopes that the next time the board will come up with better reasons or a more authoritative explanation for its refusal to adhere to this court's precedent. And if there are no further questions, I'll reject the ballot. Certainly, Mr. Avalo. Well, Mr. Tennyson, I'm sure you would have been happier if the board had addressed on remand the two questions we laid out for the board. Oh, yes. But so why haven't you filed a confession of error? I believe the answer to that is that, and this court in Wren has allowed us to, without confessing error, go back and go further. But this case already went back. It went back with instructions to do two things, although in the board's view, doing one or the other would suffice without needing to do both. The board chose to do neither. We don't have a rule of endless remands. Usually one remand to do it right should be quite sufficient. Right. I think there are a couple of reasons why. First off, just broadly, under a gary-gary, we do want to be sensitive to the foreign policy concerns. Indeed. There are very good reasons why the Secretary of Homeland Security might be the right person to make this decision. And, of course, the government argued the last time the case was here that that was so. And we said, but this depends on regulations, which haven't been discussed. And given pretty old rules from the 1940s of administrative law, we have to rely on the board's reasoning or none at all. So we do the required thing of sending it to the board. And the board chooses to give us the bird. What are we supposed to do next? Right. I would say give them a second chance with maybe stronger instructions. They've had a second chance. A third chance, then, with stronger instructions. Stronger instructions? With clear instructions. Something unclear about the previous opinion, counsel? Perhaps give them a road map where they, I think. Clearer than the previous opinion? I think it's clearer than the previous opinion. How could you be clearer than that opinion? Let me take a different approach, Mr. Tennyson. Let me go back to the question that I asked Mr. Avalon. The immigration judge here has twice, under two different standards, found the waiver of inadmissibility appropriate for Mr. Baez-Sanchez. If the immigration judge had the power to do that, does the board or the Department of Justice have any other objection to that decision? I believe that's a Ventura question. I think there might be other eligibility questions, questions of the application of deference. Were any of those raised in any of the prior appeals to the board? The board did. The DHS did raise it in its appeal of the immigration judge's second decision, if I remember correctly. Do we have that in our record? What? Do we have that in our record? It should be in your record, Your Honor. Thank you. So there would be, so under Ventura, there is reason to send it back. Even if the authority question is settled, the eligibility question, the discretionary question with regard to discretionary issues, and the say that they ultimately find that he does get a waiver, the consequences of that waiver are still things that the board has to resolve. In what way? There's still stuff for the board to do. In what way? One, there is an eligibility question as to what kinds of, you know, what. Were any of those issues raised when the immigration judge first granted the waiver of inadmissibility? I think in the initial appeal, there were questions, I think the primary issue that DHS raised was the discretionary one and the appropriate discretionary standard. And I think the same thing occurred with regard to the application of that discretionary standard in the second appeal. I don't think that the board has addressed, because it's denied the waiver multiple times, what the consequences of granting the waiver would be. So there are those sorts of issues that are still outstanding. Thinking about cases, we see a pattern fairly often. For example, there will be a criminal conviction. There will be an appeal, let's say, of a sentencing issue. There will be a remand, a new sentence, and then the defendant will raise new issues on appeal, challenging the validity of his guilty plea or a trial issue. And we treat all those issues as having been waived. By failure to raise them in the first appeal. I wonder if the, does the board have similar procedural rules? Right, of waiving issues with DHS. I think, I mean, especially considering you would see it come up in the exhaustion cases where the board just addresses things that DHS doesn't raise. Or that the petitioner doesn't raise. So I don't, there may be, the board does sometimes treat certain claims as waived, but often it addresses them anyway, and those cases get exhausted and come here. Those issues get exhausted and come here. But let me try and go back to, I think those issues should at least, the board should definitely have again, should have the opportunity to address on remand. With regard to the first set of issues, the authority. If that happens, you understand that a subsequent appeal will come to the three of us. Yes, Your Honor. You can make that clear to the board. I'm hoping that we get a decision that I'm more than happy to defend up here. Yes, Your Honor. If that happens, I mean, the petitioner could very well prevail, in which case. That would simplify a lot. Yes, it would. I mean, I love seeing you guys. It's only a waiver of inadmissibility. Right. So what else did you want to tell us? But going back to the adjudication question, there are reasons why the board should be allowed to go again. You know, in addition to the sort of, what, the broad foreign policy issue raised in the Gary agreement, there are particular issues with regard to, one, the construction of the statute and the regulations that have further consequences within the INA or within the agency's operations. The determination of the term attorney general, particularly after the Homeland Security Act, how that plays out is in. . . We addressed that in our first opinion. Yes, Your Honor. We said the statute transfers particular powers to the secretary and not others, and whether others are transferred depends on regulations and potentially a presidentially issued reorganization plan. Okay. So the board can address those questions. The board didn't, and you don't either. Right, Your Honor.  I mean, I did previously. . . What opportunity would the board have the third time that it didn't already have? This is just simply asking. . . I know. You're not the board, and it's unfair in a way. Just as it was unfair to Mr. Avalone to ask some questions of him that belonged to you, it's unfair to ask you questions that really go to the completely irresponsible behavior of the Board of Immigration Appeals because they're not you. Right. But after they've behaved irresponsibly, it's very hard to ask the court to send it back in the hope that they will do better. Right, yes, Your Honor. I would sort of, in their defense, I think there's one intervening thing that occurred between this decision and their subsequent unpublished decision. The board issued castratum, and in castratum, the Attorney General. . . I mean, not the board, but the Attorney General issued castratum, and in that decision, the Attorney General disagreed with this court's decision, and this court's previous decision. The Attorney General was entitled to his view. Yes, Your Honor. He can ask the Supreme Court to set aside our decision, though he didn't. He could ask the Supreme Court to set aside the next decision. But he can't just say, well, I disagree with the judicial decision, so I'm going to do something else. That's called contempt of court. Normally, we don't think of the Attorney General as engaged in contempt. But if that's his goal, there are remedies. I don't believe in castratum he was attempting to engage in contemptuous behavior. What I do think is that the board took the footnote and felt bound in some way by what the Attorney General had said in the footnote, by the Attorney General's statement. What was the issue in castratum? Castratum had to do with administrative closure, Your Honor, and whether or not. . . A little different from this issue. It's completely different from this issue. But in footnote 6, the Attorney General addressed this case specifically with regard to. . . Of course, there's nothing that we do that binds the Department of Justice to abandon its litigating position. But once a court decides a particular case, the decision has to be followed out, unless, of course, the Supreme Court reverses it. But as I've already said, the Attorney General did not seek certiorari from our decision. Correct, Your Honor. And there we are. At best, I can try and explain what I think, where the board thought it was and why it felt perhaps it was required to go the way it did. But. . . Required by whom? Well, they at least felt that. . . At least deemed that the Attorney General's decision in some way constrained the way in which they needed to approach this case afterwards. And maybe giving them another chance and explaining. . . Stating to them that no, this court's decision means what it means. I take it that the members of the board are attorneys. Yes, Your Honor. I'm very confident that the Attorney General is an attorney. I would certainly hope so. I don't think we are in the business of remanding to the board, telling them that the executive branch is free to have a litigating position but has to obey decisions once rendered, at least in the particular case. Unlike many other judges, we have not purported to issue a nationwide injunction. Right? And Mendez, United States against Mendez, says that our holding does not bind the agency in other cases. Right, Your Honor. But it binds the agency in this case. And if the board members don't understand that, they need to go back to law school. Yes, Your Honor. All right. Well, if the court has no further questions, the government, again, would request a remand on the authority issue and certainly under Ventura a remand on all of the other remaining issues for them to consider in the first instance. Thank you. Thank you, Mr. Tennyson, and I bet you will breathe a sigh of relief to be able to sit down. Anything further, Mr. Avalone? I would just note I was surprised to hear the government discussing Castro-Tum since that was not cited at all in their brief and never raised in defense of the board previously. And I would just reiterate our final request that we would ask the court remand with instruction to the board that it must follow the precedent of the circuit and confirm that the immigration judge does have the power to issue these waivers and that the board should thus adjudicate the case accordingly. That's it. Thank you. Thank you very much. The case is taken under advisement.